**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

FURNO MATERIALS, INC.; COONAMESSETT FARM FOUNDATION, INC.; AMICUS O&M COOPERATIVE; CLEARLYENERGY, INC.; POST ROAD FOUNDATION; CALIFORNIA GREEN BUILDING COUNCIL; and NORTHEAST ENERGY EFFICIENCY PARTNERSHIPS, on their own behalf and on behalf of all others similarly situated,

*Plaintiffs*,

v.

Case No.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF ENERGY; RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget; and OFFICE OF MANAGEMENT AND BUDGET,

*Defendants*.

---

**CLASS ACTION COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiffs Furno Materials, Inc., Coonamessett Farm Foundation, Inc., Amicus O&M Cooperative, ClearlyEnergy, Inc., Post Road Foundation, the California Green Building Council, and Northeast Energy Efficiency Partnerships, individually and on behalf of all others similarly situated, bring this civil action against Defendants Christopher Wright, in his official capacity as Secretary of Energy; the United States Department of Energy; Russell Vought, in his capacity as Director of the Office of Management and Budget; and the Office of Management and Budget (collectively, the “Government” or “Defendants”). This action seeks declaratory relief and an injunction invalidating Defendants’ unconstitutional actions.

## I. NATURE OF THE ACTION

1. In October 2025, DOE terminated approximately 284 financial awards ("grants"), most or all of which supported projects promoting clean, reliable, and affordable energy. With just one exception (a Canadian grantee), the recipient of the terminated grant and/or the grant's place of performance was in a "Blue State"—defined here as one that awarded its electoral votes to Kamala Harris in the 2024 election and has two Democratic-caucusing Senators. Meanwhile, hundreds of other similar grants, funding similar projects—but whose recipients were in non-Blue States—were not terminated. This Complaint refers to this termination action as the "Blue State Termination."

2. In three separate cases, Defendants have admitted that this was no coincidence. In each case, they stipulated that they discriminated against Blue State grantees—that they selected the grants to include in the Blue State Termination because the grantees were located in, or planned to perform their awards in, Blue States. Specifically, they stipulated that termination decisions were "based solely on the political identity of the grant recipient's state." They further stipulated that there was no other basis for the choice of which grants to terminate. Defendants simply and deliberately treated the Blue State grants and grantees differently from similarly situated Non-Blue State grants and grantees.

3. In the first case, the district court ruled that DOE's discrimination was unconstitutional and vacated the terminations as to those plaintiffs. *City of Saint Paul v. Wright*, 816 F. Supp. 3d 65 (D.D.C. 2026). In the second case, DOE stipulated to judgment on the same ground, and the district court vacated the terminations as to those plaintiffs. *See* Stipulated Judgment, ECF 14, *American Institute of Chemical Engineers v. Wright*, No. 26-cv-01063 (D.D.C. June 11, 2026). In the third case, the plaintiffs' summary judgment motion—relying again on

DOE's dispositive stipulations—is currently pending. *See* Mot. for Summary Judgment, ECF 210, *Thakur v. Trump*, No. 3:25-cv-4737 (N.D. Cal. July 15, 2026).

4. Plaintiffs bring this action because their grants were also terminated as part of the Blue State Termination. They sue on their own behalf and on behalf of the grantees whose grants were also terminated but who have not yet obtained relief in another case. On behalf of themselves and the proposed Class, Plaintiffs seek classwide relief of the same type obtained in *Saint Paul* and stipulated to in *American Institute of Chemical Engineers*—an order declaring that the Blue State Termination was unconstitutional and an injunction vacating the unconstitutional terminations. Plaintiffs also seek an order enjoining Defendants from re-terminating these grants on the same or substantially similar bases.

## II. PARTIES

### A. Plaintiffs

5. Plaintiff Furno Materials, Inc. ("Furno") is a company based in California. Furno is a leader in sustainable and modular cement production, helping decarbonize the cement industry with novel, modular kilns and innovative combustion technologies to increase efficiency and eliminate emissions. Furno was founded to standardize, decarbonize, and decentralize cement production. This mission drives Furno's work to transform an industry responsible for 8% of global CO2 emissions and bring innovative, modular, low-carbon cement solutions to markets across the U.S. and beyond.

6. Furno received a $20 million award from DOE's Office of Manufacturing and Energy Supply Chains ("MESC"). The award was to support construction of a low-carbon cement production facility in Chicago, which would use recycled industrial waste materials as feedstock to make low-carbon Ordinary Portland Cement, reducing carbon intensity by 47% and creating 80 total jobs with above average wages and benefits. The award represented a major step toward

onshoring cement production back to the U.S. and transforming the cement industry with a new model for decarbonized, modular cement production. This award was terminated as part of the Blue State Termination. Furno received a termination notice from DOE via email on or around October 2, 2025, and a "formal confirmation" via letter on or around October 9, 2025.

7. Plaintiff Coonamessett Farm Foundation, Inc. ("CFF") is a research foundation based in Massachusetts and with its principal place of business in Massachusetts. CFF's mission is to conduct scientific research and educational projects that support sustainable fisheries operations, local small-scale agriculture and aquaculture, and renewable energy sources for the benefits of the public.

8. CFF received a $3.5 million award from DOE's Office of Energy Efficiency and Renewable Energy ("EERE"). The award was to support CFF's project: "Surveying commercial fish species and habitat in wind farm areas using a suite of non-lethal survey methods." This project was designed to evaluate the impacts of offshore wind development in the western North Atlantic on commercial fish species and the benthic ecosystem using a suite of state-of-the-art, non-lethal, and non-extractive survey tools. Results of the project would have provided data on changes in commercial fish and marine invertebrate abundance and distribution, and the relationship of both to habitat changes, the presence of new structures, and changing underwater noise levels. This award was terminated as part of the Blue State Termination. CFF received a termination notice from DOE via email on October 2, 2025, and a "formal confirmation" via letter dated October 10, 2025.

9. Plaintiff Amicus O&M Cooperative ("AOMC") is based in Colorado. AOMC is a community of 55+ solar operations and maintenance ("O&M") providers across North America. Through a set of tools/templates/software, extensive knowledge sharing, and a training program

for O&M professionals, the cooperative supports its member companies in offering safe, efficient, standardized services.

10. AOMC received a $1.5 million award from DOE's Solar Energy Technologies Office ("SETO"). The project's objective is to standardize a professional development pathway, train new and existing technicians, offer meaningful credentials, and expand the workforce of solar and battery operations and maintenance (O&M) technicians. This work directly addresses the security and reliability of our national energy grid, which the Administration and the Department have identified as priorities in *Executive Order 14156, Declaring a National Energy Emergency*. To protect existing energy assets, it is imperative to train technicians to safely and efficiently maintain them. The work is also in step with the Administration's goals to provide more training for the skilled trade jobs of the future, making sure American workers have access to good-paying jobs. AOMC's award was terminated as part of the Blue State Termination. AOMC received a termination notice from DOE via email on October 2, 2025, and a "formal confirmation" via letter dated October 10, 2025.

11. Plaintiff ClearlyEnergy is an organization based in Maryland. ClearlyEnergy specializes in climate policy analysis, climate program management, and software development. Its projects include benchmarking and building performance standards, carbon accounting and disclosure, energy-efficient mortgages, virtual residential audits, and automated energy models ClearlyEnergy supports states, jurisdictions, and organizations with their targeted energy efficiency projects and policy development and implementation.

12. ClearlyEnergy received a $3.2 million award from EERE, consisting of $2.95 million in government share and $280,000 in ClearlyEnergy's cost share. The award was to support ClearlyEnergy's project: "Designing & Implementing Building Performance Standards in

Small, Rural, and Justice40 Communities." The project was designed to facilitate energy efficiencies in buildings and support the creation of local energy jobs in the home energy assessment and construction trades—two priorities identified by the Trump Administration and DOE in the Executive Order on Unleashing American Energy. This award was terminated as part of the Blue State Termination. ClearlyEnergy received a termination notice from DOE via email on October 2, 2025, and a "formal confirmation" via letter dated October 9, 2025.

13. Plaintiff Post Road Foundation is a 501(c)(3) non-profit organization headquartered in Oakland, California. Post Road helps communities make broadband and broadband-enabled energy applications available to all. It does so by, among other things, developing and deploying a consumer-centric, market-based, load flexibility technology, inspired by prior work at two DOE labs, that has the potential to upgrade the electric grid so that it can better handle the growing demand for energy from data centers and other loads and deliver affordable, reliable and abundant energy, all of which advances Secretary Wright's Order to "Unleash Golden Era of American Energy Dominance" (February 5, 2025). Deployed at scale, Post Road's technology would result in a grid that can deliver more electricity, lower bills for families, and fewer emissions for everyone.

14. Post Road received a $6.75 million award from EERE, consisting of $2.89 million in government share and $3.86 million in cost share. The award was for the Connected Communities Project, which implemented Post Road's innovative, consumer-centric, smart grid technology in Tennessee and Maine to continuously coordinate large electric appliances and equipment in residential and commercial buildings, including air conditioners, HVAC heat-pumps, water heaters and backup batteries. Post Road's software platform increases the amount of energy that the grid can deliver without substantial capital investments, increases the reliability and

resiliency of the system, and reduces costs for utilities and energy consumers. This award was terminated as part of the Blue State Termination. Post Road received a termination notice from DOE via email on October 2, 2025, and a "formal confirmation" via letter dated October 9, 2025.

15. Plaintiff the California Green Building Council ("USGBC-CA") is a 501(c)(3) non-profit and member-based organization whose vision is to transform California's built environment into a more sustainable, resilient, and equitable place for all. USGBC-CA is an independent chapter of the U.S. Green Building Council, and it brings together green building communities across California. USGBC-CA leads by inspiring leaders throughout California communities to take action on climate change, public health, and environmental justice while educating, developing, and empowering a diverse talent pipeline through training, mentorship, and direct-to-community programs. USGBC-CA connects people across disciplines to drive systemic change and advocates for innovative, impactful policy solutions that address the most urgent environmental and social challenges of our time.

16. USGBC-CA received a $3.8 million award from EERE to accelerate building decarbonization in collaboration with municipalities throughout California, including the City of Los Angeles, the County of Los Angeles, and local trade organizations. The funds come from the Resilient and Efficient Codes Implementation ("RECI") grant program created by the Bipartisan Infrastructure Law. The funded project was designed to include training for both new and existing Architecture, Engineering, and Construction professionals, as well as building inspection professionals, to build awareness, understanding, and expertise around updated codes. The project would also establish a full-service Building Performance Resource Hub to support the implementation of building performance standards and building decarbonization policies statewide. This would have provided technical, financial, and workforce support in the form of

help desk services, project technical and financing advisory, and pathways to education, training, and job placement opportunities. USGBC-CA's award was terminated as part of the Blue State Termination. USGBC-CA received a termination notice from DOE via email on or around October 2, 2025, and a "formal confirmation" via letter on or around October 9, 2025.

17. Plaintiff Northeast Energy Efficiency Partnerships ("NEEP") is a 501(c)(3) non-partisan, non-profit organization based in Massachusetts and with its principal place of business in Massachusetts. NEEP works to accelerate energy efficiency across the Northeast and Mid-Atlantic region through collaboration, best practices, and support for state and local policies and programs. NEEP convenes and supports policymakers, industry, contractors, utilities, program administrators, and communities to advance policies, programs, and market transformation initiatives that save energy, lower consumer bills, and improve resilience.

18. NEEP received two DOE awards as part of the RECI initiative. The first, the National Energy Code Technical Assistance by Region (NECTAR) project, provided $7.5 million to support energy code implementation nationwide in states and communities. The project leveraged partnerships to provide technical assistance with the goal of improving energy efficiency in homes and buildings, lowering energy bills for consumers, and supporting local jobs in construction trades. The second, the National Rural Codes Collaborative (NRCC), was for $3.6 million and was designed as a partnership with regional, state, and national partners to develop, implement, and evaluate tailored, replicable, pilot programs to improve implementation of building energy codes in rural and tribal communities across ten partner states. NEEP's awards were terminated as part of the Blue State Termination. NEEP received a termination notice for each of these awards from DOE via email on or around October 2, 2025, and a "formal confirmation" via letter on or around October 9, 2025.

**B. Defendants**

19. Defendant Christopher Wright is the Secretary of Energy and is sued in his official capacity.

20. Defendant Department of Energy (DOE) is an agency of the United States government.

21. Defendant Russell Vought is the Director of the Office of Management and Budget and is sued in his official capacity.

22. Defendant Office of Management and Budget (OMB) is a federal agency within the Executive Office of the President.

## III. JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the U.S. Constitution.

24. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this district and because multiple plaintiffs reside in this district and no real property is involved in the action.

## IV. FACTUAL ALLEGATIONS

25. The Department of Energy ("DOE") is an executive department of the U.S. Federal Government that oversees the United States' national energy policy and energy production, the research and development of nuclear power, the military's nuclear weapons program, nuclear reactor production for the United States Navy, energy related research, and energy conservation. DOE was established in 1977, when President Jimmy Carter signed into law the Department of Energy Organization Act. President Carter proposed the Department of Energy with the goal of promoting energy conservation and energy independence, and developing alternative sources of energy to reduce the use of fossil fuels.

26. DOE has a mandate from Congress to build a more reliable and secure grid, rebuild and onshore domestic energy manufacturing, create good-paying and high-quality jobs across the nation, deliver affordable and accessible energy resources to rural and underserved communities, reduce energy costs, and increase competitiveness with countries like China. Congress has provided substantial federal funding toward these ends.

27. DOE carries out a large number of programs, many prescribed by statute, through grants and cooperative agreements with private parties and state and local governments. Congress annually appropriates funds for these purposes, and has appropriated tens of billions of dollars for such awards in legislation.

28. In May 2025, Secretary Wright executed a policy memorandum titled "Ensuring Responsibility for Financial Assistance" that, among other things, established a Portfolio Review Process (PRP). The PRP tasked program offices with (1) reviewing their financial assistance awards ("grants") against a number of criteria; (2) developing proposals to retain, modify, or terminate grants; (3) presenting these proposals for feedback and recommendations to a PRP committee; and (4) making (and implementing) the ultimate decision whether to retain, modify, or terminate grants.

29. As a result of this process, DOE submitted to OMB in September 2025 a list of 624 grants that it had designated either "termination" or "cancel." These 624 grants were similarly situated in that all were included on the list of grants that program offices had reviewed and proposed to terminate or cancel.

30. In the lead-up to a possible government shutdown at the end of September 2025, President Trump threatened to retaliate against congressional Democrats and their voters should they not agree to fund the government on the President's terms. For example, on September 30,

President Trump told reporters: "We can do things during the shutdown that are irreversible, that are bad for them and irreversible by them, like cutting vast numbers of people out, cutting things that they like, cutting programs that they like."

31. Similarly, during the shutdown, President Trump posted to Truth Social that he met OMB Director Vought to "determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut, and whether or not those cuts will be temporary or permanent." President Trump continued: "I can't believe the Radical Left Democrats gave me this unprecedented opportunity."


Donald J. Trump
@realDonaldTrump

I have a meeting today with Russ Vought, he of PROJECT 2025 Fame, to determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut, and whether or not those cuts will be temporary or permanent. I can't believe the Radical Left Democrats gave me this unprecedented opportunity. They are not stupid people, so maybe this is their way of wanting to, quietly and quickly, MAKE AMERICA GREAT AGAIN! President DJT

**14.6k** ReTruths **64.7k** Likes Oct 02, 2025, 7:59 AM

32. Throughout the shutdown, President Trump openly confirmed his administration's intent to target perceived Democratic interests and priorities. During a cabinet meeting on October 9, the President stated that his administration was "only cutting Democrat programs."

33. On October 1, OMB Director Vought posted on X: "Nearly $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled. More info to come from @ENERGY." Vought then highlighted that the "[t]he projects are in the following states: CA, CO, CT, DE, HI, IL, MD, MA, MN, NH, NJ, NM, NY, OR, VT, WA."




34. In all sixteen states listed by Vought, the citizens of that state voted for Vice President Harris over President Trump in the 2024 election. And in all sixteen states, the citizens of that state currently have two elected Senators who caucus with the Democratic party. Vought's post thus openly flaunted that, in terminating DOE awards, the administration was targeting grants associated with states whose votes supported the opposition party.

35. Of the 624 grants designated by DOE as either "termination" or "cancel," OMB identified approximately 321 grants for termination. Certain of those grants had already been terminated, while others were identified for termination but not terminated. Approximately 284 were identified for termination and in fact terminated. With one exception (a Canadian grantee), all these grants had a recipient location and/or at least one place of performance in a state that awarded its electoral votes to Kamala Harris in the 2024 election and has two Democratic-caucusing Senators ("Blue State Grants"). These grants included the awards that each Plaintiff received.

36. DOE terminated those approximately 284 Blue State Grants on or around October 1, 2025. As a general matter, DOE sent grantees a termination notice by email, followed by a formal notice by letter.

37. The termination letters sent to grantees were uniform.

38. The letters uniformly stated that the terminated grants do "not effectuate the Department of Energy's priorities of ensuring affordable, reliable, and abundant energy."

39. The remaining approximately 340 grants were not terminated in October 2025, and they have not since been terminated. All such grants had a recipient location and/or at least one place of performance in a state that awarded its electoral votes to President Trump in the 2024 election or has at least one Republican-caucusing Senator ("non-Blue State").

40. The differential treatment of Blue State Grants compared with non-Blue State grants among the 624 grants designated by DOE as either "termination" or "cancel" was based solely on whether the grant recipient's location and/or place of performance was in a Blue State or a non-Blue State.

41. The projects funded by the terminated grants were designed to, among other things, expand transmission capacity to meet load growth; improve grid resilience; promote technological advancement (*e.g.*, in the areas of energy storage, industrial efficiency and decarbonization, and hydrogen production); facilitate energy efficiency; support the commercialization and domestic manufacturing of clean energy technologies; ensure power sector reliability in the face of growing threats from natural disasters and cyberattacks; maintain U.S. competitiveness in developing the technologies of the future; and make electricity more affordable.

42. DOE terminated these awards as consumers across the country are seeing their electricity bills reach unprecedented heights: public data from the Electricity Price Hub shows that national average electricity prices are up 37 percent in the last five years, with the average electricity bill in July 2026 at an all-time high of $217. These soaring bills are largely attributable to rising grid costs, including the cost of replacing aging grid infrastructure, modernizing distribution systems, and improving resilience of the system to extreme weather; volatile

generation costs and supply that's not keeping up with demand; inefficiencies throughout the system; and rising equipment and fuel costs—*i.e.*, many of the problems the terminated grants were designed to address.

43. The inclusion of the Blue State Grants in the Blue State Termination was not based on any programmatic, statutory, cost-reduction, or performance-based factor. DOE stipulated to this in other litigation. *See* Parties' Stipulations and Agreement to Obviate Discovery as to DoE and DOE's Stipulations of Fact and Agreement to Produce Grants Spreadsheet ("*Thakur* Stip."), ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, at ¶ 8.

44. The selection of the Blue State Grants in the Blue State Termination was based solely on the political identity of the grant recipient's state, *i.e.*, whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State. DOE stipulated to this in other litigation. *See Thakur* Stip. ¶ 9.

45. The differential treatment resulting in the Blue State Termination and the non-termination of non-Blue State grants was not based on a rational connection between the recipient's location and/or place of performance and DOE's past or current agency priorities. DOE stipulated to this in other litigation. *See Thakur* Stip. ¶ 10.

46. The differential treatment of the 624 grants designated by DOE as either "termination" or "cancel" was based solely on the political identity of the grant recipient's state, *i.e.*, whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State.

47. Plaintiffs' grants were among the Blue State Grants that were terminated in the Blue State Termination.

48. Plaintiffs' grants were similarly situated to non-Blue State grants that were not terminated.

**V. OTHER LITIGATION**

49. In *City of Saint Paul v. Wright*, No. 25-cv-3899 (D.D.C.), several awardees and subawardees whose grants were terminated in the Blue State Termination filed a lawsuit alleging, among other things, that the Blue State Termination violated the Fifth Amendment's Equal Protection guarantee. During the litigation, DOE stipulated that "[a] primary reason for the selection of which DOE grant termination decisions were included in the October 2025 notice tranche was whether the grantee was located in a 'Blue State.'" DOE further stipulated that the plaintiffs' grants were "comparable to certain other [DOE] awards that (a) are to prime awardees *not* in Blue States, and (b) did not receive letters terminating their awards in October 2025." Based on this disparate treatment, the district court found that DOE "made grant-termination decisions primarily—if not exclusively—based on whether the awardee resided in a state whose citizens voted for President Trump in 2024," and held that "there is no rational relationship between that classification and Defendants' stated governmental interest. Defendants' decisions to terminate Plaintiffs' grants therefore violate the Fifth Amendment." *City of Saint Paul v. Wright*, 816 F. Supp. 3d 65, 74 (D.D.C. 2026). The court vacated the termination notices associated with the plaintiffs' grants.

50. The facts to which Defendants stipulated in paragraphs 1 and 2 of Defendants' Stipulation in the *City of Saint Paul* litigation (ECF 27) are true.

51. In *American Institute of Chemical Engineers v. Wright*, No. 26-cv-01063 (D.D.C.), several awardees filed a lawsuit materially identical to the *Saint Paul* case. Shortly after the complaint was filed on March 30, 2026, DOE stipulated to the same facts as in *Saint Paul* and

stipulated to judgment. Specifically, DOE stipulated that the eleven terminated awards at issue, all of which have prime awardees in Blue States, "are comparable to certain other [DOE] awards that (a) are to prime awardees not in Blue States, and (b) did not receive letters terminating their awards in October 2025." DOE further stipulated that "a primary reason for the selection of which DOE grant termination decisions were included in the October 2025 notice tranche was whether the grantee was located in a 'Blue State.'" DOE further stipulated that "it would be legally sufficient for equal protection purposes to find that a primary reason for the termination decisions at issue is because of location in blue states." The court entered the stipulated judgment and vacated the termination notices associated with the plaintiffs' grants.

52. The facts to which Defendants stipulated in paragraphs 5a and 5b of the Stipulated Judgment in *American Institute of Chemical Engineers* litigation (ECF 14) are true.

53. In *Thakur v. Trump*, No. 25-cv-4737 (N.D. Cal.), several University of California researchers challenged grant terminations by several federal agencies. As relevant here, some alleged that the Blue State Termination by DOE was unconstitutional. DOE again stipulated to the material facts. Specifically, DOE stipulated that other than one grant to a Canadian grantee, "the 284 terminated grants had a recipient location and/or at least one place of performance in a state that awarded its electoral votes to Kamala Harris in the 2024 election and has two Democratic-caucusing Senators"; that the differential treatment of Blue State grants was not "based on any programmatic, statutory, cost-reduction, or performance-based factor"; that the inclusion of grants in the Blue State Termination "was based solely on the political identity of the grant recipient's state, *i.e.*, whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State;" that "the differential treatment resulting in the October 2025 termination of Blue State grants and the non-termination of non-Blue State grants was not based on a rational

connection between the recipient's location and/or place of performance and DOE's past or current agency priorities"; and that "Terminating Blue State grants in October 2025 while not terminating similarly situated non-Blue State grants was not part of DOE's PRP Charter."

54. The facts to which DOE stipulated in the *Thakur* litigation are true.

55. The facts set forth in paragraph 1 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

56. The facts set forth in paragraph 2 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

57. The facts set forth in paragraph 3 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

58. The facts set forth in paragraph 4 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

59. The facts set forth in paragraph 5 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

60. The facts set forth in paragraph 6 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

61. The facts set forth in paragraph 7 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

62. The facts set forth in paragraph 8 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

63. The facts set forth in paragraph 9 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

64. The facts set forth in paragraph 10 of the *Thakur* Stip., ECF 211-6, *Thakur v. Trump*, No. 3:25-cv-04737-RL, are true.

## VI. CLASS ALLEGATIONS

### A. Class Definition

65. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on behalf of the following class:

> All DOE awardees whose grants were terminated as part of the Blue State Termination.
>
> Excluded from the class are DOE awardees whose only terminated grants are on the following list: EE0011338, EE0010947, EE0010949, EE0011557, EE0010623, EE0010901, EE0011558, EE0011559, EE0011560, EE0011326, EE0011010, EE0011131, EE0011801, EE0009951, EE0011133, EE0010930, EE0010622, FE0032276.

66. Also excluded from the class are DOE awardees whose terminations were rescinded, or grants reinstated, prior to the filing of this Complaint, and who did not have additional grants terminated as part of the Blue State Termination.

67. For purposes of the class definition, "Blue State Termination" is as defined in this Complaint.

68. This class definition is subject to revision or amendment as the matter proceeds.

69. The members of the Class are so numerous that joinder of all class members is impracticable.

70. The proposed Class, as defined above, includes more than 100 awardees.

71. Plaintiffs' claims are typical of the claims of other members of the Class. Their claims and the claims of all Class members arise out of the same conduct alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

72. Plaintiffs' grants, like those of all others in the Class, were terminated based on the grantee's Blue State location. Defendants did not treat Plaintiffs' grants differently from those of other Class members.

73. There are questions of law and fact common to the Class. Common questions include, but are not limited to: whether DOE targeted Class members' grants for termination based on their location in Blue States; whether DOE treated Class members differently from similarly situated grantees in non-Blue States; whether the Blue State Termination violated the Fifth Amendment; whether the Blue State Termination violated the First Amendment; whether the Class should be certified; whether Plaintiffs and members of the Class are entitled to injunctive and/or declaratory relief; the basis for Class members' inclusion in the Blue State Termination; and the decision-making process behind the Blue State Termination.

74. DOE included all grants in the Blue State Termination for the same reason. Specifically, the inclusion of grants in the October notice tranche was based solely on the political identity of the grant recipient's state, *i.e.*, whether the recipient's location and/or place of performance was in a Blue State or a non-Blue state.

75. The differential treatment resulting in the termination of Class members' grants and the non-termination of non-Blue State grants was not based on a rational connection between the recipient's location and/or place of performance and DOE's past or current agency priorities.

76. Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs have no interests antagonistic to those of other members of the class, and they are committed to the vigorous prosecution of this action. In addition, Plaintiffs have retained counsel competent and experienced in class-action litigation, constitutional law, and litigation against the federal government regarding the termination of grants.

77. Numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy and would create a risk of inconsistent or varying adjudications.

78. DOE acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

79. For every member of the class, DOE identified grants based on the grantee's Blue State location, and ordered the grantees to cease doing grant-funded work.

## VII. CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE FIFTH AMENDMENT

80. The above-alleged paragraphs are incorporated by reference.

81. The Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954).

82. In identifying DOE grants to terminate in October 2025, Defendants intentionally treated Plaintiffs and Class Members differently from similarly situated entities based on where the grantee was located and/or where the award would be primarily performed.

83. The sole reason for the selection of which DOE grants to include in the Blue State Termination was whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State.

84. Alternatively, a primary reason for the selection of which DOE grants to include in the Blue State Termination was whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State.

85. Defendants' reasons for treating Plaintiffs and Class members differently from similarly situated entities are arbitrary and irrational.

86. The differential treatment resulting in the Blue State Termination was not based on a rational connection between the recipient's location and/or place of performance and DOE's past or current agency priorities.

87. Defendants lack any legitimate government interest in terminating Plaintiffs' and Class members' grants. Even if Defendants could identify a hypothetical legitimate government interest, the targeting of Plaintiffs' and Class members' grants for termination—but not similarly situated grants to recipients in Non-Blue States—is not rationally related to any such legitimate state interest.

88. As a direct and proximate result of Defendants' differential treatment, Plaintiffs and Class members have suffered concrete economic and non-economic harm, including loss of funding, loss of funding opportunities, loss of access to federally funded programs and resources, loss of investments, costs of mitigation, diversion of resources, reputational harm, and chilled association.

89. Through the actions above, Defendants violated the Due Process Clause of the Fifth Amendment and its Equal Protection guarantee.

## COUNT TWO
## VIOLATION OF THE FIRST AMENDMENT

90. The above-alleged paragraphs are incorporated by reference.

91. Defendants' October 2025 termination of awards held by grantees associated with Blue States also violates the First Amendment.

92. The First Amendment includes a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). The Government thus may not deny benefits or rescind funding because of the applicant's or recipient's association with a disfavored group. *Elrod v. Burns*, 427

U.S. 347 (1976). The First Amendment does not permit penalizing disfavored political associations through the power of the purse.

93. In identifying DOE grants to terminate in October 2025, Defendants intentionally treated Plaintiffs and Class Members differently from similarly situated entities based on the political entities with which they chose to associate—*i.e.*, the states in which they chose to reside, operate, or perform their award.

94. Defendants took adverse action against Plaintiffs and Class members because of their association with disfavored political entities. Defendants would not have terminated these awards but for that protected association.

95. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered concrete economic and non-economic harm, including loss of funding, loss of funding opportunities, loss of access to federally funded programs and resources, loss of investments, costs of mitigation, diversion of resources, reputational harm, and chilled association.

## VIII. PRAYER FOR RELIEF

96. WHEREFORE, Plaintiffs, on their own behalf and on behalf of the proposed class, respectfully request that this Court enter judgment on their behalf, and on behalf of those similarly situated, and adjudge and decree as follows:

a. Declare the Blue State Termination unlawful, as in violation of the U.S. Constitution;

b. Permanently enjoin Defendants from implementing, giving effect to, or reinstating under a different name the Blue State Termination and accompanying Termination Notices;

c. Permanently enjoin Defendants from re-terminating the Blue State Grants on the same or substantially similar bases or otherwise continuing to discriminate against Plaintiffs and Class members in violation of their First and Fifth Amendment rights;

d. Award Plaintiffs and counsel for the Proposed Class reasonable costs and attorneys' fees;

e. Award any other such relief that the Court may deem just and proper.

Respectfully submitted this 9th day of September, 2026.

*/s/ Emma Lerner Freeman*
Emma Lerner Freeman
**LERNER FREEMAN LAW PLLC**
147 Prince Street, 4th Floor
Brooklyn, NY 11201
emma@lernerfreemanlaw.com
(413) 221-9033

*/s/ Jamie Crooks*
Jamie Crooks
(*pro hac vice* forthcoming)
Michael Lieberman
(*pro hac vice* forthcoming)
Yinka Onayemi
(*pro hac vice* forthcoming)
**FAIRMARK PARTNERS, LLP**
400 7th Street NW, Suite 304
Washington, DC 20004
jamie@fairmarklaw.com
michael@fairmarklaw.com
yinka@fairmarklaw.com
(619) 507-4182

*/s/ Gabriel J Daly*
Gabriel J Daly
(*pro hac vice* forthcoming)
Kim Smaczniak
(*pro hac vice* forthcoming)
**ROSELLE LLP**
300 New Jersey Ave, NW, Suite 300
Washington, DC 20001
gabe.daly@rosellellp.com
kim.smaczniak@rosellellp.com
(617) 817-4105

*Attorneys for Plaintiffs and the Proposed Class*